Good morning, Your Honors. My name is Carla Ryan and I represent Mr. Clark. This is on a habeas case out of Arizona. It was a 2000 crime where a cop was killed. My client has a history, a long history, of mental illness, and that was a key issue here. The trial court, it was a bench trial, found that there was, that all the elements had been proved and that my client was guilty and he ended up receiving 25 years to life. The, after it went up on appeal, the U.S. Supreme Court did accept cert on it and the matter was discussed and it went back for a new hearing on whether or not the issue of whether the trial court had preserved or not preserved issues and whether or not the observational evidence was relied on and considered during the trial.  I think it's fair to say that the trial court did not have any additional evidence to support the mens re arguments. The counsel, I want to make sure that I understand the position. You're not proffering any additional evidence. There's nothing that was not introduced at the trial. The only thing that we're at this time is during the post-conviction there was legal testimony from a legal expert, Mr. Tom Gorman, as to the effectiveness of counsel. Okay. But there's no additional evidence that would have been considered observational evidence that you have proffered to the court in the meantime. No, Your Honor. So in other words, trial counsel got everything in front of the judge that it would have introduced. The difficulty is your IAC argument, your ineffectiveness of counsel argument is they didn't argue it for mens rea purposes. They argued it for other purposes. Right. They tried to, and they tried to during the PCR amend to make that very clear. They argued for McNaughton purposes but didn't argue it separately for mens rea. Right. And the Court had indicated that they could make an offer of proof, but he would not consider it. So they were in a position that even if they made the offer of proof, it was not going to be considered regarding the mens rea. And it should have been considered for that because it's a factual issue as to whether or not Mr. Clark understood that it was a police officer and not an alien or someone else, and that was an issue that had to be proved beyond a reasonable doubt by the State in order for them to obtain a guilty on the first-degree murder of killing a police officer in the line of duty. The magistrate on the habeas agreed and found that that trial counsel was ineffective for failing to preserve this issue by failing to make the offer of proof that the judge had requested. Five justices, out of the nine of the U.S. Supreme Court, also found that the issue was not preserved. The district court also agreed the issue was not preserved. And this is a major, substantial, constitutional issue because the State has to prove every element of the crime beyond a reasonable doubt. But the Supreme Court, in its decision, did not remand the case back to the trial court, did it? No. Not on this issue. They just discussed it and that, and it was left up to the States and they went back. On the other side, this applies also to the appellate lawyer, even though the magistrate and the district court didn't find ineffective on counsel, on appellate counsel, because the underlying argument is exactly the same. And now with the Martinez case and its progeny, that gives a reason why we should be able to consider IAC of appellate counsel. Additionally, in this case, appellate counsel was also trial counsel, so he couldn't have raised his own IAC. So they should consider the appellate counsel's failure to raise it on the appeal as well as the fact that they didn't raise it during the trial. Also, the State relies and argues mainly that this is a new law or a novel claim and, therefore, counsel shouldn't have been held responsible or shouldn't be held responsible for knowing this or raising it. However, Arizona now, under State v. Wright, which was filed in April of 2010, has said it was not new law. And if you go back and look at State v. Mott, you'll find that they never talk about lay witnesses. The only testimony they're talking about in Mott is Dr. Karp, an expert, and not on factual observations. So there was no discussion in Mott about it. So this isn't a new law. This isn't new categories that the U.S. Supreme Court has come up with, and it should not be precluded because it's new law. And the district court also agreed with that. And the record reflects that this was not preserved because the trial court or the trial counsel did not want to make an offer of proof, even though the trial court wanted them to. They just didn't do it. And the reasons during the IAC or during the PCR was that, you know, he was stressed out, he was tired. It was a long, long trial, and this thing had been going on for years. The client had been in and out of the State hospital on at least two occasions from pretrial, and before that he had received assistance before the crime happened. So there was a history of irrational behavior that was deteriorating constantly since 1999. The crime happened in 2000. All counsel basically misunderstood Mott and didn't go back and look at it and realize that there is a difference between observational evidence or what people have observed over the expert testimony based on testing and so forth. That wouldn't be allowed. If all counsel failed to see that observational exception in Mott, then does that mean that all counsel were ineffective? Well, I'm talking about the defense counsel in this case. Right. There was two of them. But doesn't it tell us something, that nobody saw this before, that it was not made explicit by the Arizona Supreme Court, that counsel at the time seemed to have missed this, that counsel before the Supreme Court seemed to have missed this? And the fact that the Supreme Court divided it out in this way suggests that there's something novel about the Supreme Court's decision in Clark rather than that everybody else was ineffective. Except if you go back and read the case, it's pretty clear. I went back last night and I was reading it, and it seems pretty clear that they're only talking about Dr. Karp and specific medical expert testimony that she wanted to present in the Mott case. They weren't talking about lay witnesses. They weren't talking about people's observations. They weren't talking about what the school system saw, what the friends saw. They weren't talking about the paranoid behavior that had been deteriorating since 1999 with this client. And, like, Mott didn't have any of that in it. So Mott really wasn't on point with the observational evidence. It's really a different issue. And Mott didn't address it. You know, I reread Mott this morning, and I had a hard time finding the observational point in there. Well, they don't really discuss it. Right. Well, if they didn't discuss it, how can it be an effective assistance of counsel, then, to have failed to have presented it? But they should have been raising it because it's a factual issue that goes to whether the Court could have found, beyond a reasonable doubt, that the State proved that my client knew this was a police officer in the line of duty. And if he didn't know it was a police officer, then they don't have murder one of a police officer in the line of duty. They don't have the ---- he may have killed the cop, but it doesn't automatically mean that he knew it was a police officer. But on that point, the district court, disagreeing with the magistrate, says, look, even if I get to that point, there's no prejudice. He clearly knew it was a police officer. Here's the behavior, here's the evidence. But if you look at his behavior and look at his friend's testimony, the counselor at the school's testimony, the mother's testimony, the father's testimony, the brother's testimony, my client didn't know. I mean, he thought his mother was an alien. And, you know, he was losing it. He had no clue who people were. Mentally, he did not know. And that's what they had to prove, that he knew not just that it was a police officer, but that my client knew and had the specific intent to kill a police officer. And that just couldn't be proved with that, you know, with the observational evidence. It undermines that whole finding. So in this case, then, the State didn't have to prove every element of the crime beyond a reasonable doubt, which is a very fundamental constitutional substantial issue and does go to prejudice. I'd also like to just briefly touch on the competency issue here. And, again, the same thing goes because of Martinez, and that you can consider it on behalf of the appellate counsel as well as on behalf of the trial counsel. And the district court agreed with that as well. There are three major factors in determining whether or not there should be a competency hearing. One, irrational behavior. Two, demeanor at trial. And three, prior medical opinions. Now, in this case, prior to trial, they did hold a mental health hearing and found him incompetent, I think it was in 2003 or 2002. He was sent to the State Hospital. After several months, they finally found him competent. He went back, and that was by stipulation the first time. Then he came back, and after more discussions and that, they sent him back to the State Hospital. So he'd been committed twice for a restoration before trial. During the trial, and that was when he came back, the attorney trial lawyer convinced him to waive a jury trial and proceed with a bench trial, which is a constant you know. And the client basically just relied on his attorney, who he had grown up next door to and known for years. And so he sort of was just following his attorney's advice. In this case, during trial, he started to deteriorate again. And the during the post-conviction hearing, both lawyers indicated that they had to physically nudge him to try and keep him awake. They were trying to talk to him that he wouldn't talk about the case, that he was just here and there. Even the victim's widow indicated she was very concerned that he wasn't listening. Now, it wasn't just that he was disinterested. That doesn't automatically mean that he's incompetent. That doesn't mean that he's confident either. But in this case, we knew he wasn't taking his meds. It was on the record. But the trial counsel never followed up with it. The only thing, he made one request to the trial court indicating he didn't think the jail was giving the meds. Then he indicated during post-conviction that he knew he was on one of the two meds he had, and that made him tired, more tired. But that they both, trial counsel, indicated that he was of no assistance. They couldn't talk to him. He couldn't follow things. And even though you may know the parties and the process, it doesn't automatically relate to the fact that he understood and really comprehended what was going on. In this case, they had a terrible time with him during the trial. And yet, counsel failed to ask for a reevaluation. The issue of competency is an ongoing issue. Kennedy, you want to reserve the rest of your time? I would like to. It goes much faster than you think it's going to. Good morning. Assistant Attorney General Michael Littell, on behalf of Respondents. At the time of Mr. Clark's case, the rule in Arizona was as follows. Arizona does not allow evidence of a defense of mental disorder short of insanity, either as an affirmative defense or to negate mens rea, the mens rea element of a crime. That was a flat, broad rule stated in Mott. There is no category of observation, evidence, or even lay testimony discussed in Mott. It was a broad, flat rule. And in fact, the concurrence in Mott agrees with the result, but again, kind of chastises the majority for basically having such a flat, broad rule. And of course, the statement, any evidence of a mental disorder, presumably would include something like delusions. You have the same policy concerns about keeping this evidence out on the mens rea as you do as keeping out the diminished capacity evidence on mens rea. In the Supreme Court Clark case, the Court noted several concerns about restricting diminished capacity evidence on the issue of mens rea. One is that if you have – if you allow it, then you basically confuse the state's insanity burden or law with that concerning mens rea, and you basically diminish the State's choice to allow them to have an insanity defense the way they think is best, and they basically say that you should have that in theory, in practice as well as in theory. The same would apply with the delusions and things like that, so that can certainly be read to include the same thing. You have the same problems, too, if you have delusions or anything like that negating mens rea as far as releasing dangerous people in society. You also have the same possible confusion from the jurors about, you know, what delusions mean, especially if you try to divorce that from psychological or mental health evidence. So all the same policy reasons would seem to apply to, quote, observation evidence, but of course there is no discussion of observation evidence in Mott or in Christensen. And in fact, I think the easiest reason why the State wins in this case is because you can't even make this claim. You can't even say now that counts was ineffective for failing to reserve an observation evidence claim without hindsight, without the Clark decision itself. If we just don't talk about Clark, we can't even talk about this claim. It makes no sense. And certainly, the State court's ruling, which kind of rel – which relied essentially on the minority in Clark, which basically found it to be a novel claim without any support whatsoever in the briefing or in Arizona law anywhere, is a reasonable basis to reject the claim, because counsel does not have to predict future law or make new law in order to be effective. In this case, we have Attorney Goldberg taking a case to the United States Supreme Court on two different issues involving mental health, and the fact that he lost does not mean he was ineffective. And even if you could go back in time and say that somehow maybe counsel could have figured this out, there was very good reasons for not actually dividing this and slicing and dicing and make it a separate claim. As the dissent says in Clark, if you have this observation evidence, for example, the evidence about him playing loud music, the State's theory was that was to lure the police, to cause a disturbance, lure the police and carry out this plan to shoot a police officer, which he talked about before. Now, the defense basically says, well, that could be from paranoid schizophrenia and he's trying to drown out voices. Well, if you have a trial just with observation evidence without diminished capacity stuff and mental disease stuff, which Clark says you can keep out, you basically just have a teenager playing loud music. It's basically meaningless. So that's a good reason why an objective attorney can say, well, even if I think about this, I don't really get that far with it, so I'm going to really go for the you know, go for it and basically challenge the rule, the Mott rule in its entirety. And there was actually, you know, models for him doing so, because we have the dissent in Clark, first of all, and then when the case went to Federal District Court, the Federal District Court ordered habeas relief. So we had two cases or two, you know, legal opinions to base a decision that which didn't, which hadn't made that distinction before about observation evidence, and that provided a very good model for Mr. Gilbert to take the case in the United States Supreme Court. Another reason why counsel is not ineffective for not raising the observation evidence claim is because there is none apparent in the record. We have a list of stuff in the R&R which talks about his problems in school and his fight with his friend and his trouble with his brother, but generally that seems to be the type of diminished capacity evidence that's precluded. It doesn't go to Negi Menzraya. Prior to the murder, I think there's two instances where he calls his mother an alien, but there's no evidence ever where he reacted to anyone as an alien. There's no evidence at the time of the crime that he was reacting to people as aliens. There's no evidence that he ever thought police officers were aliens. There's no evidence that right the day before or the right after he was arrested that he was reacting or talking about aliens. So basically there's just no evidence, and if he would have tried to create this claim at that time, which would have been very hard to do in the first place, he would really have no evidence to support it. At any rate, I think this is a relatively easy decision because this is a decision under EPA. The State court ruling here was on the merits, and that clearly was not unreasonable. Three justices of the Supreme Court disagreed with the majority, and I think we have to say they're fair-minded jurists under Harrington v. Richter. And as the district court concluded, even if we get beyond that, we have no prejudice here. As I just discussed, in support of his observation evidence claim, he has these kind of vague behavioral things. Nowhere where he ever reacted to an alien on the State side, we have the fact that we have a police officer in full uniform with his lights on, his siren on, the defendant pulls over and responds to the lights and siren. We have the prior threats against police officers. We have the fact that nowhere in the record was any indication he had hallucinations at all. We have the fact that he shot the officer in the back as opposed to having some kind of bizarre interaction. For example, if the police had gone to his house and all of a sudden he wakes up, there's a cop there, he might be confused or something. This is a typical motor vehicle stop where, unfortunately, too many police officers do get injured or killed. And we have the fact that all his other threats and acts of violence in the past had been goal-directed and not in response to any aliens. So for all those reasons, Appellant has not shown a deficient performance or prejudice. Concerning the competency issue, the big issue at the evidentiary hearing in State court was the Dr. Parrish report. By the time this report was done, in fact, it was done by mistake. Mr. Middlebrook asked Dr. Parrish to perform a or do a report concerning his mental status at the time of the offense, and she did a competency evaluation. He was really found competent by the trial court. By the time this happened, the issue had kind of boiled down to whether or not his ability to cooperate was volitional or not, and the court found it was. Dr. Parrish's report doesn't call that into question. In fact, she basically really just said, well, I don't think he can really appreciate everything. I think a lot of defense may not appreciate their exact circumstances, but he certainly had the understanding necessary and the ability to cooperate with his attorney if he desired to do so. And that is very well supported by the record, which indicates when he was in the state hospital that he selectively engaged in activities and would not want to engage in the restoration activities and preferred the other kind of more recreational activities. But eventually he did start cooperating with counsel, and when he did so, in fact, kind of go backwards a little bit. Instead of claiming that the murder had anything to do with aliens, he basically gave an alibi defense, which under the facts of the case was kind of silly, but I think that shows as evidence of a guilty mind as opposed to any kind of delusion at the time of the offense by giving this kind of silly alibi defense. During trial, Mr. Middlebrook noted for the trial court that Mr. Clark did not appear to be falling quite as well as he had before that issue was addressed, and the court made sure he was back on his medications. There was never any specific assertion that he was acting bizarrely or there was no court outburst. There was nothing specific proper by Mr. Middlebrook. The court did not observe anything, put it on a record. So we basically just have a little blip in the system where they put him back, made sure he was on his meds, and things continued with no further problems. I know opposing counsel talked about the widow making comments about Mr. Clark, but I think that goes to the State's benefit and shows that this is during sentencing when the widow basically said, well, he's not even paying attention. His head was on the table, and he gets up and he says, I'm on F and meds, which shows that he was paying attention. Shortly after that, he gave a sentencing statement, proclaimed his innocence, and then he had no problem later on talking to the pre-sentence report writer. I know Mr. Middlebrook, as evidence of Mr. Clark's incompetent, alleged incompetence, basically talked about the fact that he was doing little Chinese characters during trial and that he asked him about, you know, how's your son doing and how's your wife or how's the weather, that how's your weather, how's your son doing. I can't imagine how that would show incompetence. As far as the Chinese characters goes, as evidenced in the brief, I think footnote 11, one of the examiners, fortunately, did speak Chinese, and he spoke to Mr. Clark. He asked him about this, and he asked him something in Chinese, or he said something in Chinese, and Mr. Clark actually responded in Chinese. So I don't think that's not very unusual under the circumstances. And it would be pure speculation to conclude that if another competency evaluation had been done, that Mr. Clark would have been found incompetent. So this is another claim that was reviewed under merits by the State court, and that was not unreasonable under EPA. And finally, regarding the appellate counsel claims, it's the State's position that this claim is abandoned on appeal. If you look at the opening brief, there's really no argument. There's a passing citation on page 20 of the brief which cites Martinez, but it doesn't talk about Martinez. It doesn't even assert that the appellate counsel claim should be excused. It's just kind of a general statement of divorce from any argument at all. If we get beyond that, I think the State should be allowed to respond to any Martinez argument, and Martinez itself would appear just to apply to trial counsel claims at the initial review stage. Here we have appellate counsel claims, and I know recently this Court has said that it does apply to appellate counsel claims, too. That's Havan Yun v. Curry, 736 F. 3rd, 1287. But in another case previous to that, McKinney v. Rhine, 730 F. 3rd, 903, the Court said the exception applies only when the underlying constitutional claim is an effective assistative trial counsel. There's a little bit of split there. I think the Supreme Court rule is very clear. In Martinez, the Court said, Coleman held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial collateral proceedings for claims of ineffective assistive counsel at trial. So that Martinez seems to me to address that specifically. And even if we get past that, then we have the fact that here the incompetency of or the appellate counsel claim regarding competency, not raising a competency claim, that was raised in the motion to amend, but not in the petition for review. So that fails at the second level in addition to being an appellate counsel claim. And finally, those claims fail in the merits, so the Court can deny them kind of on the merits under 2254b2, or conversely find that they lack merit under Martinez and do not provide a basis for procedural default, to excuse procedural default. On the competency claim, there's a very modest aim to ensuring the defendant is competent to stand trial, to make sure he understands the proceedings, which he clearly did, and make sure he can assist counsel and hear the evidence. Especially, I think, if you look at the State's supplemental excerpt of records, Volume 3, it kind of tracks him through the course of his mental health evaluations and basically shows that it was volitional and that he could cooperate when he wanted to, and that was the State trial court's finding and the PCR court's finding as well. This was never called into question by anything that happened at trial or Dr. Parrish's trial, including the observation evidence claim. You know, this would have been almost impossible, I think probably maybe impossible, to raise this claim at the time of the appeal. It didn't exist. Clark didn't exist. There's no basis for it. Mott didn't provide a basis for it. Christensen didn't provide a basis for it. And more importantly, I think, is that counsel did raise the claim, direct attack on Mott, and took it all the way to the United States Supreme Court. He should be commended for that, not criticized. And as the Supreme Court said in Smith v. Robbins, while it's possible to bring a stricken claim based on counsel's failure to raise a particular claim, it is very difficult to demonstrate he was incompetent. So that applies in Spades in this case, where he brought a claim, and arguably a much better claim than an observation evidence claim, because if he had won his diminished capacity claim, then I think there would have been doubt about the conviction, but he lost that claim and here we are. So based on all those reasons, I ask that the Court affirm the district court's ruling. Thank you. Roberts. Thank you. Ms. Ryan, you have time reserved. Thank you, Your Honor. Sorry about the glasses, but I should get older. Okay. As the State keeps saying, there's no evidence to support that the client was delusional or paranoid or with the observational evidence. But there was. I mean, the friends and the family and the schools all indicated that he was very paranoid, he was delusional, that he had locked up his car and he'd keep a bird in the car because he was afraid somebody was breaking in, that he had strings tied all around so he'd know if anyone tried to get in. He would not shower or eat at home because he thought he was going to be poisoned because of the alien thing, that he would only he started. Then he went the opposite way and was wearing layers and layers of clothes to protect him. And his friends testified that they didn't believe anything he was saying, that he was paranoid all the time. So there is quite a bit of evidence to indicate that he wasn't in a mental state where he could have understood, or at least as an alternative argument, that it was in his mind it was an alien and he was afraid and he didn't realize it was a police officer in the line of duty. Regarding the competency, it's not just Dr. Parrish in the Newt One report. She had been seeing Mr. Clark longer than anybody else in this case. And as I said, competency is an ongoing issue. You've got to evaluate it all the time. And in the Ninth Circuit case, Dreyer, that I think was filed in January of 2013, it said that the competency was a fundamental principle, that you have to have just a genuine doubt of competency to get a hearing. You don't have to know if he's competent or not. You don't have to prove he's not competent before you can have a hearing. But if there's any doubt at all, you should hold the hearing. And I think Dreyer also went on to state that the defense counsel was the gatekeeper. They're the ones in the best position to make a decision as to whether or not a hearing should be held to determine competency, and that they had an affirmative duty to request a hearing if there was any doubt or a genuine doubt. And in this case, the record indicates that there was doubts. Mr. Middlebrook indicated that he never believed the client was competent before, during, or after trial. And as far as the appeal, I do not believe anything was abandoned. The Martinez thing was raised. Other issues were argued, indicating why the appellate ineffective claim should be considered, and the district court did reach it on the merits. And with that, thank you. Thank you, Ms. Ryan. I thank both counsel for the argument. And with that, we have completed the oral argument calendar for the day, and the Court stands in recess.
judges: Mahan, Wallace, Bybee